**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward BAHE, Defendant–Appellant.**

**No. 99–10014.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1999

Filed Jan. 10, 2000

Jon M. Sands, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellant.

Elizabeth D. Collery, (argued) and Louis M. Fischer, (brief), United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before: PREGERSON and WIGGINS, Circuit Judges, and CARTER, District Judge.[1]

PREGERSON, Circuit Judge:

This appeal arises from a clerical error in one part of 18 U.S.C. § 3583(d), the statute that authorizes a district court to impose discretionary conditions of *supervised release* following imprisonment. *See* 18 U.S.C. § 3583(d). In so authorizing a district court, § 3583(d) refers to certain subsections of 18 U.S.C. § 3563(b), the statute that authorizes the discretionary imposition of conditions of *probation.* Section 3583(d) specifically refers to § 3563(b)(1) through (b)(10) and (b)(12) through (b)(20). Conspicuously absent is a reference to subsection (b)(11).

Appellant Edward Bahe argues for the first time on appeal that the absence of any reference to subsection (b)(11) in § 3583(d) signifies Congress's express intent to deny a district court the authority to impose confinement in a community treatment center or halfway house for rehabilitative purposes as a condition of supervised release. Our analysis of the language of the statute, its legislative history, relevant precedent, and the applicable Sentencing Guidelines lead us to the conclusion that Bahe is mistaken.

The absence of a reference in § 3583(d) to the subsection of § 3563(b) that authorizes community confinement for rehabilitative purposes was an inadvertent clerical error made twelve years after the enactment of § 3583(d). The clerical error was the result of the complex drafting process involved in enacting the Mandatory Victims Restitution Act of 1996 (MVRA). The MVRA made changes to § 3563(b), *not* to § 3583(d). Because the literal application of this clerical error in § 3583(d) "will produce a result demonstrably at odds with the intentions of its drafters," *United States v.*

---

1. The Honorable David O. Carter, District Judge for the Central District of California, sitting by designation.

*Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), it cannot control the meaning of the statute. Therefore, it does not signify that a district court lacks the authority to impose confinement in a community treatment center or halfway house for rehabilitative purposes as a condition of supervised release following imprisonment. Indeed, the legislative history establishes that Congress unambiguously intended that a district court have such authority.

Here, Bahe was sentenced to fifteen months imprisonment followed by up to one year of supervised release at a community correction facility for rehabilitative treatment. The district court imposed this sentence after Bahe pled guilty to two counts of abusive sexual conduct involving two of his mentally disabled female grandchildren entrusted to his care. The court concluded that confinement in a community treatment center was necessary to ensure that Bahe received treatment for his sexual deviancy. Because we hold that the district court had the authority pursuant to 18 U.S.C. § 3583(d) to impose community confinement for rehabilitative purposes as a condition of Bahe's supervised release, we affirm Bahe's sentence.[2]

I.

Bahe, a 60–year–old Navajo, was charged with sexually abusing two of his female grandchildren entrusted to his care. At the time of Bahe's arrest, the children were fourteen and sixteen years of age and mentally disabled because of fetal alcohol syndrome. On September 16, 1998, Bahe pled guilty to violating 18 U.S.C. §§ 1153, 2244(a)(3), and 2245 as charged. "The probation office in the Presentence Report recommended that Bahe be sentenced to fifteen to twenty-one months in prison, followed by up to one year of supervised release at a community treatment facility so that he could be treated for his sexual deviancy."

At sentencing, the district court accepted the parties' plea agreement. The plea agreement provided, *inter alia*, that after imprisonment Bahe would serve a term of supervised release pursuant to the Sentencing Reform Act of 1984 and the relevant Sentencing Guidelines. It also provided that Bahe waived his right to appeal or collaterally attack "any matter pertaining to this prosecution and sentence if the sentence imposed is consistent with the terms of this agreement." During a colloquy with the court, Bahe acknowledged his waiver of appeal, but subsequently at sentencing, through counsel, asserted that it would not apply if the court imposed an illegal sentence.

Also at sentencing, Bahe asked for a downward departure because of his physical and mental conditions, his illiteracy, and his ability to speak Navajo only. The district court declined a downward departure, but did sentence him to fifteen months imprisonment, which was at the low end of the guideline range. In addition to Bahe's term of imprisonment, the court adopted the probation office's recommendation and imposed community confinement in a halfway house for reha-

**2.** Bahe also contends that the waiver of appeal provision contained in his plea agreement does not bar his appeal because his sentence includes the "illegal" condition of supervised release to a community treatment center or halfway house following a term of imprisonment. The question whether the waiver of appeal provision bars this appeal thus hinges on our determination whether the district court had authority to impose community confinement as a condition of supervised release following imprisonment. Because we hold that the district court had the authority to impose this condition on Bahe, we affirm

his sentence. We therefore decline to reach the waiver issue. *Cf. United States v. Jackson,* 189 F.3d 820, 822 n. 1 (9th Cir.1999) (declining to decide whether a waiver of appeal was valid where "both the merits of the appeal and the applicability of the waiver hinge[d] on" the court's conclusion that the district court had the authority to impose drug testing as a condition of supervised release); *cf. also United States v. Bolinger,* 940 F.2d 478, 480–81 (9th Cir.1991) (affirming a condition of probation despite an express waiver of the right to appeal the sentence).

bilitative purposes as a condition of Bahe's supervised release *for up to one year or until discharged by the probation officer pursuant to its authority under* U.S. SENTENCING GUIDELINES Manual (U.S.S.G.) § 5.D1.3 ("Conditions of Supervised Release"), § 5.F1.1 ("Community Confinement"), and 18 U.S.C. § 3583(d). The court stated that it imposed this condition "to facilitate treatment for sexual deviance" on the basis of its finding that the abusive conduct had "gone on for some period of time" and that Bahe "definitely needs sexual treatment."

Bahe objected to this condition of supervised release. He asserted that it constituted unauthorized additional punishment. He also argued that, although he may need treatment, he should not be sent to Behavioral Systems Southwest (BSSW), in Phoenix, AZ, the only halfway house available for such sexual counseling at the time. Instead, Bahe's counsel argued that Bahe should be sent to a facility where Navajo-speaking counselors were available—either in Flagstaff, Arizona, which is closer to the Navajo Reservation, or at an outpatient treatment center on the Navajo Reservation itself.

The district court rejected Bahe's contentions and requests. The court's concern was that the Bureau of Prisons would not make Navajo interpreters available to Bahe during his imprisonment and that therefore Bahe would not receive the treatment he "definitely needed" for his rehabilitation. To ensure the necessary treatment, the court imposed the condition of supervised release following Bahe's imprisonment discussed above, ordered the probation officer to "ensure that [Bahe] receive sexual deviance treatment ... including, if necessary, ensuring that the defendant be afforded a Navajo interpreter," and left it up to the probation officer to decide whether Bahe should be released from the halfway house earlier than the one year period allowed.

Bahe filed this timely appeal. We have jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291 and to review the sentence imposed under the Sentencing Guidelines under 18 U.S.C. § 3742(a).

## II.

### A. Standard of Review

■■■■] The legality of a sentence imposed under the Sentencing Guidelines is reviewed de novo, *see United States v. Jackson,* 176 F.3d 1175, 1176 (9th Cir. 1999) (per curiam), as is a district court's interpretation of the Sentencing Guidelines, *see United States v. Smith,* 175 F.3d 1147, 1148 (9th Cir.1999). The imposition of a condition of supervised release is reviewed for abuse of discretion. *See United States v. Bee,* 162 F.3d 1232, 1234 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1509, 143 L.Ed.2d 661 (1999).

■■■■] Review of an issue raised for the first time on appeal is for plain error. *See* FED. R. CRIM. P. 52(b). "Plain error is found only where there is '(1) error, (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vences,* 169 F.3d 611, 613 (9th Cir.1999) (quoting *United States v. Randall,* 162 F.3d 557, 561 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1480, 143 L.Ed.2d 563 (1999)).

### B. Authority to Impose Community Confinement as a Condition of Supervised Release

■■■] Section 3583(d) of Title 18 of the U.S. Code gives a district court "broad discretion" to order conditions of supervised release following a term of imprisonment. *Bee,* 162 F.3d at 1234–35 (citing *United States v. Consuelo–Gonzalez,* 521 F.2d 259, 265 (9th Cir.1975) (en banc)). We have consistently held—both before and after the enactment of the Sentencing Reform Act of 1984—that "[t]he guiding principle" for determining the validity of a condition of supervised release is whether the condition imposed "can reasonably be said to contribute significantly both to the rehabilitation of the convicted person and

to the protection of the public." *Consuelo-Gonzalez,* 521 F.2d at 264; *see also Bee,* 162 F.3d at 1235 (affirming the authority of a court under § 3583(d) to impose a condition of supervised release on a defendant convicted of abusive sexual contact that prohibited possession of sexually stimulating material and barred contact with minors); *United States v. Bolinger,* 940 F.2d 478, 480–81 (9th Cir.1991) (affirming a condition of supervised release that barred the probationer "from associating with motorcycle clubs" as necessary "to prevent reversion into former crime-inducing lifestyle").

With the enactment of § 3583(d) in 1984, Congress expressly provided that a court may order as a condition of supervised release following imprisonment any condition that:

> (1) ... reasonably relates to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);[3]
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a);
>
> any condition set forth as a *discretionary condition* of probation in *section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20),* and any other condition it considers to be appropriate.

*Id.* (emphasis added).

Bahe claims that the district court was not authorized to confine him to a commu-

nity treatment center as a condition of his supervised release because § 3583(d)'s reference to § 3563(b)'s subsections does not include subsection (11). At the time of Bahe's sentencing in 1998,[4] subsection (11) of § 3563(b) authorized confinement in a community correction facility or participation in a community corrections program for all or part of a term of probation. *See* 18 U.S.C. § 3563(b)(11) (1998). Bahe seizes on § 3583(d)'s failure to refer to subsection (11) to argue that Congress expressly intended to deny the district court the authority to sentence him to community confinement for treatment of sexual deviancy as a condition of his supervised release following imprisonment. At first blush, Bahe's argument has superficial appeal given the language of this portion of § 3583(d) in effect in 1998. *Cf. Tang v. Reno,* 77 F.3d 1194, 1196 (9th Cir.1996) ("In interpreting a statute, we must examine its language. If 'the statute is clear and unambiguous, that is the end of the matter.'" (quoting *Sullivan v. Stroop,* 496 U.S. 478, 482, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990))). But Bahe is mistaken. A closer examination of § 3583(d) reveals an internal ambiguity.

Although the absence of a reference in § 3583(d) to subsection (11) suggests that a district court lacks the authority to impose this condition of supervised release, subsection (3) of § 3583(d) suggests that a district court has such authority. Subsection (3) states that a sentencing court may impose any condition of supervised release that "is consistent with any pertinent poli-

---

**3.** The relevant provisions of § 3553(a) provide in pertinent part:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

...

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medi-

cal care, or other correctional treatment in the most effective manner.

18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(a)(2)(D).

**4.** The parties do not dispute that the law that applies in Bahe's case was that in effect at the time of sentencing. *See United States v. DeSalvo,* 41 F.3d 505, 512 (9th Cir.1994). We therefore address the law and the Sentencing Guidelines in effect in 1998 when Bahe was sentenced.

cy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)...." The Sentencing Commission has promulgated one policy statement and a corresponding guideline that are "pertinent" to the resolution of this case. Both expressly authorize a district court to impose community confinement as a condition of supervised release following imprisonment.[5] Specifically, the policy statement set forth in Sentencing Guideline § 5D1.3, entitled "Conditions of Supervised Release," states that "community confinement" may be imposed as a "special condition" of supervised release where "appropriate on a case-by-case basis." U.S.S.G. § 5D1.3(e). Community confine-

ment is defined as "[r]esidence in a community treatment center, halfway house or similar facility." U.S.S.G. § 5D1.3(e)(1) (cross-referencing Sentencing Guideline § 5F1.1). Sentencing Guideline § 5F1.1 provides that "[c]ommunity confinement may be imposed as a condition of probation or supervised release." U.S.S.G. § 5F1.1.[6] Indeed, the district court in this case specifically relied on § 5F1.1 in imposing community confinement as a condition of Bahe's supervised release.

] Hence, a district court's authority under subsection (3) of § 3583(d) appears to be at odds with its authority under the portion of § 3583(d) that refers to the subsections of § 3563(b).[7] Because

5. We recognize that we recently held that the Sentencing Commission's "policy statements in Chapter 7 are advisory" only. *United States v. George,* 184 F.3d 1119, 1122 (9th Cir.1999). In *George,* we were concerned solely with the affect *Chapter 7's* policy statements have on a sentencing court's discretionary authority in re-sentencing a defendant for violating a condition of probation or supervised release. *Id.* at 1120–21. The Sentencing Commission has yet to promulgate mandatory guidelines dealing with revocation of probation or supervised release. Instead, the Commission "has chosen to promulgate policy statements only ... to provide guidance [to the courts] while allowing for the identification of any substantive or procedural issues that require further review" before final guidelines are issued. *Id.* (quoting U.S.S.G. Ch. 7, Pt. A1 (1998)). We therefore concluded in *George* that

> [b]ecause the Commission has not yet issued guidelines relating to revocation of supervised release or changed its view that the Chapter 7 policy statements are merely advisory, we see no reason to reduce the flexibility of district courts in sentencing supervised release violators. Of course, when the Commission issues actual guidelines ..., we are required by prior case law to make them binding.

*Id.* (internal quotation marks and citations omitted).

The Sentencing Commission, however, has already promulgated guidelines relating to a district court's authority to confine a defendant to a community treatment center as a condition of supervised release. U.S.S.G. § 5F1.1 explicitly authorizes a court to impose this condition. This guideline is referred

to in the policy statement set forth in U.S.S.G. § 5D1.3(e). Moreover, § 3583(d)(3) explicitly states that any condition of supervised release imposed must be "consistent with any pertinent policy statements issued by the Sentencing Commission." Therefore, Sentencing Guideline § 5F1.1 and the corresponding policy statement set forth in § 5D1.3(e), unlike the policy statements set forth in Chapter 7 referred to in *George,* are binding on sentencing courts. *See Williams v. United States,* 503 U.S. 193, 201, 112 S.Ct. 1112, 117 L.Ed.2d 341(1992) (stating that "[w]here ... a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guideline"); *see also Stinson v. United States,* 508 U.S. 36, 42, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (holding that Sentencing Guidelines as well as corresponding policy statements and commentary are "binding on federal courts").

6. Commentary Note 2 to this guideline also states that "[c]ommunity confinement generally should not be imposed for a period in excess of six months. A longer period may be imposed to accomplish the objectives of a specific rehabilitation program, such as drug rehabilitation." U.S.S.G. § 5F1.1 comment. n. 2.

7. We emphasize that the ambiguity is within § 3583(d). We are not dealing with a conflict between the statute and the Sentencing Guidelines. The Sentencing Commission "has no authority to override" a statute. *Neal v. United States,* 516 U.S. 284, 294, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996) (holding that the statutory provision for calculating the weight

of this internal inconsistency, the meaning of § 3583(d) is unclear. Where statutory "language is not clear, Congress's intent must still be ascertained." *Tang*, 77 F.3d at 1197. In interpreting § 3583(d), we must therefore consider " '[t]he purpose, the subject matter, the context [and] the legislative history' of this statute." *United States v. Valencia–Andrade*, 72 F.3d 770, 773–74 (9th Cir.1995) (quoting *United States v. Miguel*, 49 F.3d 505, 507 (9th Cir.1995)). Indeed, "the meaning of statutory language, plain or not, depends on context." *Holloway v. United States*, 526 U.S. 1, 119 S.Ct. 966, 970, 143 L.Ed.2d 1 (1999) (internal quotation marks and citations omitted). Context in this regard relates to "the design of the statute as a whole and its object and policy." *Gozlon–Peretz v. United States*, 498 U.S. 395, 407, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991) (quoting *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)). We therefore turn to an examination of the statute's legislative history, its language and structure as a whole, the governing case law, and the applicable Sentencing Guidelines.

### 1. The Legislative History

In 1984, Congress enacted §§ 3563(b) and 3583(d) as part of the Sentencing Reform Act of 1984 (the Act), set forth in Title II of the Comprehensive Crime Control Act of 1984. *See* Sentencing Reform Act of 1984, chs. 227–228, Pub.L. 98–473, Title II, 98 Stat. 1993 (1984) (codified as amended 18 U.S.C. §§ 3551–3742 (1997)); *see also* S. REP. 98–225, *71–*371 (reporting the recommendations of the Senate Committee on the Judiciary concerning passage of the Act). The Act gave sen-

tencing courts the authority to impose discretionary conditions of *probation* under § 3563(b) and discretionary conditions of *supervised release following imprisonment* under § 3583(d). *See id.* at *172–*86, *231–*38 (emphasis added). Understanding the difference between probation and a term of supervised release following imprisonment is essential to understanding the import of the clerical error in 18 U.S.C. § 3583(d).

Under the Sentencing Reform Act of 1984 probation is a "sentence in and of itself," which may be imposed as "an alternative to incarceration." U.S.S.G., Pt. B, Intro. comment. (1998) (citing 18 U.S.C. § 3561); *see also* S. REP. 98–225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, *available in* 1983 WL 25404, *161–*63. But imposition of probation is prohibited "where the defendant is sentenced at the same time to a sentence of imprisonment for the same or a different offense." U.S.S.G. § 5B1.1, comment. background (citing 18 U.S.C. § 3561(a)(3) and S. REP. 98–225). The Sentencing Reform Act of 1984 thus effectively abolished "split sentences," but replaced them with the "functional equivalent" of "a term of imprisonment followed by a period of supervised release." *Id.* (citing former 18 U.S.C. § 3651 (repealed in 1984), 18 U.S.C. § 3583, and S. REP. 98–225). Moreover, conditions of probation "can be fashioned so as to meet fully the statutory purposes of sentencing, including ... *just punishment* for the offense," *id.* (emphasis added); *see also* 18 U.S.C. § 3553(a)(2)(A) *cited in* 18 U.S.C. § 3563(b), but conditions of supervised release may *not* involve pun-

---

of LSD controls over a contrary guidelines provision); *accord United States v. Sharp*, 883 F.2d 829, 831 (9th Cir.1989) ("[W]hen a statute requires a sentence different than that set by the guidelines, the statute controls."). Nevertheless, in undertaking the "holistic endeavor" of statutory construction, *McGann v. Ernst & Young*, 102 F.3d 390, 394 (9th Cir. 1996) (quoting *United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 455, 113 S.Ct. 2173, 124

L.Ed.2d 402 (1993)), our task is to " 'interpret the statutory scheme of sentencing, including the Guidelines ... harmoniously as a whole,' " *United States v. Vallejo*, 69 F.3d 992, 994 (9th Cir.1995) (quoting *United States v. Shorthouse*, 7 F.3d 149, 152 (9th Cir.1993)). Therefore, we view the pertinent Sentencing Guidelines here as an aid in resolving the conflict between subsection (3) of § 3583(d) and the portion of § 3583(d) that refers to the subsections of § 3563(b).

ishment or incarceration, *see* 18 U.S.C. § 3583(d).

Furthermore, Congress established conditions of supervised release following imprisonment as distinct sentencing options from that of probation. These sentencing options replaced the previous system of parole. *See* S. Rep. 98–225, *234–*36. Under the parole system, the parole board could release a prisoner on a supervised basis before the prisoner's sentence was fully served, but any condition of release imposed ended when the prisoner's sentence ended. *See id.;* 18 U.S.C. §§ 4201–4218 (repealed 1984, repeal effective 1987). Under the new system, a prisoner must serve the full term of his sentence, and if the sentencing court deems it necessary, an additional term of supervised release. *See* 18 U.S.C. § 3583(b); S. Rep. 98–225, at *234 ("[W]hether the defendant will be supervised following his term of imprisonment is dependent on whether the judge concludes that he needs supervision, rather than on the question whether a particular amount of his term of imprisonment remains.").

As originally enacted in 1984, § 3583(d) unequivocally gave a sentencing court the authority to confine a defendant to a community correction facility for rehabilitative treatment as a discretionary condition of his or her supervised release following imprisonment. *See* 18 U.S.C. § 3563(b)(12) (1984); *see also* S. Rep. 98–225, at *182–*83. That authority was given by § 3583(d)'s reference to subsection (12) of § 3563(b) as one of the conditions of probation that a sentencing court may impose as a condition of supervised release. *See* 18 U.S.C. § 3583(d) (1984); *see also* S. Rep. 98–225, at *235–*36. In 1984, subsection (12) of § 3563(b) authorized confinement in a community treatment facility as a condition of probation. *See* 18 U.S.C. § 3563(b)(12); *see also* S. Rep. 98–225, at *182–*83. "Paragraph (12) [of § 3563(b)] provide[d] that the judge may impose as a condition of probation that the defendant reside at, or participate in the program of, a community corrections facility for all or part of a term of probation." *Id.* at *183.

Congress's intent in 1984 was thus clear. It intended that under § 3583(d) a sentencing court *may* impose confinement to a community treatment facility as a condition of supervised release following imprisonment. That intent and the court's authority continued unabated and unaltered for more than a decade.

Twelve years later, Congress made the clerical error that gives rise to this appeal. The error occurred when Congress enacted the Mandatory Victims Restitution Act of 1996, a portion of the Antiterrorism and Effective Death Penalty Act of 1996. *See* Mandatory Victims Restitution Act of 1996, Pub.L. 103–132, Title II, Subtitle A, 110 Stat. 1227 (1996) (codified as 18 U.S.C. §§ 3663A, 3613A). With the MVRA, Congress sought to establish a unitary legislative scheme to mandate victim restitution. To accomplish this goal, Congress enacted new sections of Title 18 and deleted others—including subsection (2) of § 3563(b), which authorized the imposition of a fine as a discretionary condition of supervised release. *See generally* H.R. Conf. Rep. 104–518 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944, *available in* 1996 WL 183509, at *39. Because the MVRA deleted subsection (2), it also renumbered the remaining subsections of § 3563(b). *See* 18 U.S.C. 3563(b) (historical and statutory notes, which read in pertinent part: "Pub.L. 104–132, § 203(2)(A), struck out former par. (2) ... [and] § 203(2)(B), redesignated former pars. (3) to (21) as (2) to (20), respectively"). As a result, the community confinement subsection shifted from § 3563(b)(12) to (11)—the numerical subsection omitted from § 3583(d), which remained unchanged.

 Nothing in the text or legislative history of the MVRA or § 3563 suggests that Congress intended to alter the conditions that a sentencing court may attach to a term of supervised release under § 3583(d). Nor is there any indication that Congress ever intended the MVRA to exclude or eliminate a sentencing court's authority to confine a defendant to a com-

munity treatment center as a condition of his or her supervised release. Although the legislative history of the MVRA is extensive, *see generally* H.R. CONF. REP. 104–518, it is utterly silent as to its affect on § 3583(d). Under these circumstances, we decline to interpret this silence as an indication of congressional intent to amend the law on conditions of supervised release. As we have previously stated:

> We do not lightly presume that Congress intended to work a substantive change to existing law with an ambiguous amendment. Absent any mention in a statute's legislative history that Congress intended a change, courts ordinarily will refuse to find that ambiguous statutory language significantly alters an existing statutory scheme.

*In re Century Cleaning Services, Inc.*, 195 F.3d 1053, 1060 (9th Cir.1999) (citing *Dewsnup v. Timm*, 502 U.S. 410, 419–20, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)). Quite simply, if Congress intended to abandon a discretionary condition of supervised release that had been the law for over twelve years, surely it would have mentioned this intent somewhere in the legislative history. It did not. *Cf. Taylor v. United States*, 495 U.S. 575, 601, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (noting that if Congress had meant to alter the previously enacted definition of a "burglary" when it subsequently and inadvertently omitted a reference to it in later amendments, its intent "surely . . . would have been mentioned somewhere in the legislative history"). We therefore hold that § 3583(d)'s failure to reference the subsection of § 3563(b) that authorizes community confinement for rehabilitative purposes was "an inadvertent casualty of [the] complex drafting process" involved in enacting the MVRA, which does not support the inference that Congress intended to alter the authority of a sentencing court under § 3583(d). *Cf. id.* at 589–90, 110 S.Ct. 2143 (holding that Congress's deletion of Title 18's original definition of burglary, which occurred when the Career Criminals Amendment Act of 1986 was enacted, was "an inadvertent casualty of a complex

drafting process" that did support the inference that Congress intended to change the statutory definition of burglary).

On the other hand, the legislative history of both §§ 3563(b) and 3583(d) reveals that when Congress enacted the Sentencing Reform Act of 1984, it chose to omit from § 3583(d) the condition of probation originally set forth in subsection (11) of § 3563(b) because subsection (11) authorized intermittent incarceration as a condition of probation. *See* S. REP. 98–225, at *182–83; *see also* 18 U.S.C. § 3563(b)(11) (1984) (authorizing a district court to order a defendant to "remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation)." Intermittent incarceration is not an appropriate condition of a defendant's supervised release *following* his release from prison because a defendant cannot be released until he or she has already served his *full* term of imprisonment. *See id.* Indeed, Congress expressly enacted the original version of subsection (b)(11) of § 3563 in 1984 *only* as a condition of a sentence of probation—not as a condition of supervised release following a term of imprisonment under § 3583. *See* S. REP. 98–225, at *182. It was sufficiently punitive to constitute a probationary sentencing option, but also permitted flexible and intermittent periods of imprisonment, such as on weekends, intermixed with "short periods of commitment to a training center or institution as a part of a rehabilitation program," in lieu of straight imprisonment. *Id.* It was specifically

> *not intended* to carry forward the split sentence provided in [former] 18 U.S.C. § 3651, by which the judge impose[d] a sentence of a few months in prison followed by probation. If such a sentence is believed appropriate in a particular case, the judge can impose a term of imprisonment followed by a term of supervised release under section 3583, which section was amended by the com-

mittee in the 97th Congress to permit such application.

*Id.* (emphasis added).

Moreover, "[a] key difference between the probation statute [§ 3563] and the supervised release statute [§ 3583] is that the probation statute allows the imposition of discretionary conditions that are reasonably related to [the sentencing purpose of a 'just punishment' under] § 3553(a)(2)(A), while the supervised release statute does not." *United States v. Eyler,* 67 F.3d 1386, 1393 & n. 8 (9th Cir.1995) (recognizing that conditions of probation versus supervised release, although "often treated similarly, . . . are distinct in status"). Rehabilitative treatment commensurate with the nature of the offense and the defendant's history and characteristics that is necessary to ensure the public's safety in the future are the only purposes for which conditions of supervised release may be imposed. *See* 18 U.S.C. § 3583(d) (citing §§ 3553(a)(1), (a)(2)(B)-(a)(2)(D)). Intermittent "official detention" or incarceration as a condition of probation is obviously punitive, but confinement to a community correction center or halfway house for rehabilitative treatment is not. *See Reno v. Koray,* 515 U.S. 50, 59, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (holding that pretrial confinement at a community treatment facility is not "imprisonment" and therefore cannot be credited against a defendant's prison sentence); *Tanner v. Sivley,* 76 F.3d 302, 303–04 (9th Cir.1996) (holding that confinement to a community treatment center does not constitute "official detention" or incarceration).

Thus, Congress originally and naturally *excluded* from § 3583(d) any reference to the subsection of § 3563(b) that authorized intermittent incarceration and *included* the subsection authorizing community confinement for rehabilitative purposes. And from 1984 until 1996, that was the law. Beginning in 1996, when the subsections of § 3563(b) were renumbered, subsection (11) no longer referred to intermittent incarceration, but instead referred to confinement in a community treatment center for rehabilitative purposes, which had been

subsection (12) before the renumbering. As a result, the authority of a district court to impose this condition of supervised release was inadvertently and unintentionally eliminated.

We therefore conclude that the legislative history of §§ 3583(d) and 3563(b) makes abundantly clear that Congress intended for sentencing courts to have the discretion to impose community confinement for rehabilitative purposes as a condition of supervised release following imprisonment. Congress's reason for omitting from § 3583(d) reference to subsection (11) of § 3563(b) had nothing to do with its intent regarding the authority to impose this condition. To the contrary, unrelated substantive changes to § 3563(b) and an accompanying numerical shift in § 3563(b)'s subsections caused an inadvertent clerical error in § 3583(d). That inadvertent clerical error did not and should not alter the discretionary authority of a sentencing court under § 3583(d) in light of the unambiguous legislative history to the contrary.

It would thus be "absurd" to accept Bahe's interpretation of the Act. See *Tang,* 77 F.3d at 1196–97 (suggesting that there is a need to look "beyond the plain meaning in order to derive the 'purpose' of [a] statute" where not to do so would lead to an "absurd" result). Bahe's interpretation would require us to hold that a sentencing court *may not* impose confinement to a community treatment facility or halfway house for rehabilitative purposes as a condition of supervised release following imprisonment when congressional intent to the contrary is explicit and unassailable. We therefore decline to do so. *Cf. United States v. Childress,* 104 F.3d 47, 52 (4th Cir.1996) (holding "the plain language of a criminal statute controls, unless (1) ambiguity exists in the language of the statute, or (2) a literal reading of the statute would contravene the legislative intent"), *cited with approval in United States v. Moore,* 136 F.3d 1343, 1345 (9th Cir.1998) (adopting the reasoning stated in *Childress* and

therefore holding that given the absence of clear legislative history to the contrary, the court could not correct a misnumbering drafting error created by Congress at the time it enacted a single statutory scheme.) *Cf. also Gozlon–Peretz,* 498 U.S. at 404–06, 111 S.Ct. 840 (holding that, although "it is generally presumed that Congress acts intentionally and purposely in disparate inclusions or exclusions," where Congress omits the effective date of one provision of a statute and includes a date for another, the court will infer that the provision for which no date is given "takes effect on the date of enactment," "absent a clear direction by Congress to the contrary").

### 2. Section 3583(d) as a Whole— Including the Catch–All Provision

We have consistently interpreted 18 U.S.C. § 3583(d), especially its catch-all provision, as affording sentencing courts "broad discretion in setting conditions of supervised release." *Bee,* 162 F.3d at 1234. The overarching purpose in imposing conditions of supervised release, as discussed above, is to ensure that the rehabilitative needs of the defendant are met and that the community into which the defendant will be released is protected from further harm by the defendant. *See id.* at 1235; *see also* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(D); S. REP. 225, at *234-*36. A district court's "discretion [in this regard] is limited only by the purposes and factors set forth in section 3553(a) to which a condition of supervised release must 'reasonably relate.'" *Carter,* 159 F.3d at 400 (quoting 18 U.S.C. § 3583(d)(1),(2)).

Thus, "[e]ven very broad conditions are reasonable if they are intended to promote the probationer's rehabilitation and to protect the public." *Bee,* 162 F.3d at 1235 (citing numerous examples of other cases in which we have affirmed broad conditions of supervised release). For example, in *Bee* we held that a condition that infringed on a defendant's fundamental right of free speech was "sufficiently relat-

ed to the goal of 'protect[ing] the public from further crimes of the defendant,'" to "effectively address [the defendant's] sexual deviance problem," and properly "reflected the seriousness of the offense conduct." *Id.* at 1234–35 (quoting 18 U.S.C. § 3553(a)(2)(c) and affirming as conditions of supervised release restrictions on the defendant's right to have contact with minor children, to "loiter within 100 feet of school yards, parks, playgrounds, arcades, or other places primarily used by children under the age of 18," and to "possess any sexually stimulating or sexually oriented material deemed inappropriate by his probation officer"). Similarly, in *Carter,* we held that § 3583(d)'s catch-all provision authorized the discretionary imposition of alcohol testing and outpatient drug treatment as a condition of supervised release of a defendant convicted of armed robbery, despite the absence of evidence that the defendant had a history of drug or alcohol abuse. *See* 159 F.3d at 398, 401 (holding that evidence of the defendant's suicide attempt by overdosing on migraine medication was a sufficient basis for the district court to conclude that drug and alcohol testing and treatment were necessary for the defendant's rehabilitation).

If, as a condition of supervised release, a defendant's right to free speech may be abridged to "effectively address [his] sexual deviance problem," *Bee,* 162 F.3d at 1235, then *a fortiori,* a defendant may be committed to community confinement for sexual deviancy treatment as a condition of supervised release. It would be illogical to rule otherwise.

Moreover, sentencing a defendant such as Bahe to a community corrections facility so that he can be treated for his sexual deviancy—after he serves fifteen months in prison, but before he reenters society at large—directly serves a primary goal for conditions of supervised release. According to Congress, one of "[t]he primary goal[s] of ... a term [of supervised release] is to provide rehabilitation to a defendant who has spent a fairly short period

in prison for punishment...." S. REP. 98–225, at *235. Bahe's condition of supervised release clearly constitutes a sentence designed for the "rehabilitation of a defendant who has spent a fairly short period in prison for punishment." *Id.*

Furthermore, the grammatical structure of § 3583(d) as a whole suggests that Congress linked the reference to § 3563(b)'s subsections to the catch-all provision that permits a district court to impose "any other condition it considers to be appropriate." Section 3583(d) states in one clause that a court may order "any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers appropriate." This phraseology suggests that Congress did not intend the list of § 3563(b)'s subsections as a limitation on a sentencing court's discretionary authority to impose such conditions. Rather, it suggests that Congress intended it as a non-exhaustive, illustrative list of possible conditions of supervised release that a court may deem appropriate.[8] Indeed, the legislative history of the Act, as discussed above, evinces Congress's intent to leave to the sound discretion of the sentencing court the determination whether a term of supervised release following imprisonment is necessary to rehabilitate a defendant and to protect the public. *See id.* at *232–36 ("[W]hether the defendant will be supervised following his term of imprisonment is dependent on whether the judge concludes that he needs supervision, rather than on the question whether a particular amount of his term of imprisonment remains."); *see also Carter*, 159 F.3d at 400. In this respect, we conclude that the fact that § 3583(d) fails to refer to subsection (b)(11) of § 3563 has limited meaning and certainly does not signify that a district court lacks the authority to impose this condition of supervised release when it deems it necessary to a defendant's rehabilitation and the public's safety.

Here, the district court determined, and Bahe does not dispute, that he needed treatment for his sexual deviancy. The district court further determined that confinement to a community treatment center was necessary to ensure that Bahe receive that treatment. Thus, his condition of supervised release was "intended to promote the probationer's rehabilitation and to protect the public." *Bee*, 162 F.3d at 1235. It was therefore "reasonably relate[d] to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(d)" and "involve[d] no greater deprivation than [was] reasonably necessary," in accordance with the dictates of § 3583(d) as a whole. 18 U.S.C. § 3583(d).

### 3. The Sentencing Guidelines

Finally, as discussed above, we note that the Sentencing Guidelines explicitly authorize the imposition of community confinement as a condition of supervised release. *See* U.S.S.G. § 5F1.1 ("Community confinement may be imposed as a condition of probation or supervised release."). And the Sentencing Commission's policy statement on conditions of supervised release includes "community confinement" as one of five "special conditions" of supervised release that "may be appropriate on a case-by-case basis." U.S.S.G. § 5D1.3(e)(1). The Sentencing Commission promulgated both of these Guidelines pursuant to its authority under 28 U.S.C. § 994(a). Under subsection (3) of § 3583(d), a sentencing court may impose any condition that is "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)." 18 U.S.C. § 3583(d)(3). Therefore, a sentencing court has the authority under subsection (3) to confine a defendant, such as Bahe, to a community treatment center for rehabilitative purposes as a condition of his supervised release.

---

8. The legislative history of § 3563(B) reveals that Congress never intended the list of conditions included in this section to be "exhaustive, and it [was] not intended at all to limit the court's options...." S. REP. 98–225, at 175–76.

Sentencing Guidelines §§ 5D1.3(e)(1) and 5F1.1 thus echo and amplify Congress's unambiguous intent to give sentencing courts the discretion to impose this condition of supervised release. The fact that they give sentencing courts this authority unequivocally further supports our conclusion that the inadvertent omission from § 3583(d) of the subsection of § 3563(b) that authorizes community confinement as a condition of probation has little significance.

### III.

In sum, we hold that a district court has the discretion under 18 U.S.C. § 3583(d) to impose conditions of supervised release, including confinement to a community center or halfway house so that a defendant may receive specific rehabilitative treatment. Section 3583(d)'s omission of the subsection in § 3563(b) that specifically refers to community confinement as a condition of probation was an inadvertent clerical error made twelve years after § 3583(d) was enacted. The clerical error in § 3583(d) was caused by changes made to § 3563(b), which resulted in the deletion of one of its subsections and the renumbering of its remaining subsections. The unambiguous legislative history of § 3583(d) establishes that Congress never intended to change the discretionary authority afforded district courts under § 3583(d). In addition, the meaning of § 3583(d) taken as a whole, in light of the pertinent Sentencing Guidelines and this circuit's unequivocal precedent, makes clear that a district court has the authority to impose community confinement as a condition of supervised release following a term of imprisonment.

Accordingly, we hold that the district court did not err in imposing community confinement as a condition of Bahe's supervised release following imprisonment so that he could receive treatment for his sexual deviancy.

AFFIRMED.