**UNITED STATES of America, Plaintiff,**

v.

**Tyler MILLS, Defendant.**

**No. 98–CR–166.**

United States District Court, E.D. Wisconsin.

Jan. 31, 2002.

Tyler Mills, pro se.

Carolyn F. McNiven, for U.S.

### *DECISION AND ORDER*

ADELMAN, District Judge.

### I.  BACKGROUND

On September 29, 1999, I sentenced defendant Tyler Mills to forty-six months

---

imprisonment, to be followed by three years' supervised release. I ordered that he spend the first ninety days of his release in a halfway house (upon first availability).[1]

On December 14, 2001, Mills filed an "Emergency Motion for Modification of Conditions of Supervised Release" pursuant to Rule 32.1(b) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3583(e) asking that I vacate the 90 day community correctional center condition. Mills made two arguments in his motion. First, he claimed that he had no need for the services of a community correctional center. He stated that he had maintained excellent institutional adjustment and had completed educational and vocational programs while incarcerated. He noted that he had been accepted as a full-time student at the University of Minnesota—Twin Cities and argued that placement at a community correctional center would interfere with his studies. He noted that had established a stable residence with his sister in Edina, Minnesota. Second, Mills argued that 18 U.S.C. § 3583(d), which authorizes courts to impose certain conditions of supervised release, does not permit me to impose placement in a community correctional center as a condition of supervised release.

In an order issued on December 27, 2001, I rejected Mills's first argument. I noted that residence at a halfway house is intended to provide a structured, supervised environment to assist defendants in gradually rebuilding their ties to the community. Fed. Bureau of Prisons, U.S. Dep't of Justice, *About the Federal Bureau of Prisons* 10 (July 2001), http://www.bop.gov/ipapg/ipaabout.pdf. Such placement is generally limited to six months. U.S.S.G. § 5F1.1 Application n. 1

(2001 (last amended Nov. 1, 1989)). I noted that Mills was twenty-two years old and has been incarcerated since the age of sixteen. The U.S. Probation Officer assigned by this district to defendant's case advised me that Mills had responded very well to the institutional structure and organization provided by prison life, but that he committed numerous rule violations while he was incarcerated in jail, with a jail's comparative lack of structure for inmates. On behalf of the Probation Office, she strongly opposed vacating the halfway house requirement.

I accepted this recommendation. I commended Mills for his admirable record while in prison. Nonetheless, given his history, I found it fully appropriate to take steps to ease his transition to life in an open community.

However, I found that Mills's statutory argument had merit. Based on my review of the statute and case law, I concluded that I likely lacked authority to impose a halfway house requirement under section 3583(d). I ordered the government to respond within thirty days to the question of whether I was authorized to impose halfway house confinement as a condition of supervised release.

On December 28, 2001, Mills filed via facsimile a "Motion for Temporary Restraining Order and Preliminary Injunction," asking that I rescind the community correctional center condition of his supervised release.[2] On December 29, 2001, I ordered the government to respond to this motion by January 11, 2002.

On January 11, 2002, the government filed its response. The government took the position that I should modify the conditions of defendant's supervised release by

---

1. This decision and order uses "halfway house" interchangeably with "community correctional center."

2. Mills was apparently released from prison on that date.

rescinding the halfway house requirement and ordering him to spend ninety days in home confinement with his sister. The government contended that defendant's changed circumstances warranted the modification and included a proposed order reflecting its position. The government did not address defendant's statutory argument. Because I continued to believe that halfway house confinement was warranted under the circumstances, I declined to sign the proposed order.

On January 30, 2001, the government responded to the statutory issue. It stated that aside from *United States v. Bahe,* 201 F.3d 1124 (9th Cir.), *cert. denied,* 531 U.S. 1027, 121 S.Ct. 601, 148 L.Ed.2d 514 (2000), which I had suggested was unpersuasive, it had found no authority permitting a court to require residency in a halfway house as a condition of supervised release. The government further stated that it did not wish to argue that a federal court could lawfully impose such a requirement.

## II. ANALYSIS

■ Title 18, U.S.Code § 3583(d) authorizes the sentencing court to impose various discretionary conditions of supervised release. Defendant contends that this section does not authorize imposing halfway house residence as a supervised release condition. Section 3583(d) provides that *supervised release* conditions may be imposed from among certain *probation* conditions set forth in a different statute, 18 U.S.C. § 3563(b), specifically, §§ 3563(b)(1) through (b)(10) and (b)(12) through (b)(20). Section 3583(d) thus conspicuously omits any reference to the probation condition set forth at § 3563(b)(11)—which authorizes a court to order residence at a halfway house as a *probation* condition. Thus, defendant contends that Congress specifically excluded halfway house residency as a permissible *supervised release* condition. He there-

fore argues that the court lacked lawful authority to impose halfway house residency as a condition of supervised release as part of his sentence, and requests that this condition be vacated.

■ Statutory construction begins with the plain meaning of the statute. Under the doctrine of "expressio unius est exclusio alterius" ("the expression of one thing is the exclusion of another"), all omissions in a statute should be understood as exclusions. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Ex Parte McCardle,* 7 Wall (74 U.S.) 506, 513, 19 L.Ed. 264 (1868); 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:23 at 304–07 (6th ed.2000 rev.) [hereinafter Singer, *Sutherland's Statutory Construction* ]. Thus the Tenth Circuit found that where Congress explicitly referred to and incorporated 21 U.S.C. § 851(a) in 18 U.S.C. § 3559(c)(4), the statute governing sentence classification of offenses, but not 21 U.S.C. § 851(b) or § 851(c), the non-reference to §§ 851(b) and (c) indicated that Congress did not intend to incorporate those subsections, and so § 3559(c)(4) was read as not incorporating them. *United States v. Oberle,* 136 F.3d 1414, 1423–24 (10th Cir.1998). The rule of expressio unius, as applied to the conspicuous non-reference to 18 U.S.C. § 3563(b)(11) among the permissible conditions of supervised release in § 3583(d) at issue here, would thus indicate that § (b)(11) is not a permissible condition of supervised release.

Nearly two years ago, the Ninth Circuit found that § 3583(d) implicitly does authorize a court to order halfway house residency as a supervised release condition. *United States v. Bahe,* 201 F.3d 1124 (9th Cir.), *cert. denied,* 531 U.S. 1027, 121 S.Ct. 601, 148 L.Ed.2d 514 (2000). The court

relied upon the three requirements in § 3583(d) that must be satisfied before the court may order a proposed discretionary condition of supervised release. The first requirement is that the proposed supervised release condition be reasonably related to the factors to be considered in imposing a sentence under section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D). 18 U.S.C. § 3583(d)(1). The second is that the proposed supervised release condition involve no greater deprivation of liberty than is reasonably necessary for the purposes of sentencing. 18 U.S.C. § 3583(d)(2). The third requirement is that the proposed supervised release condition be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3). The Sentencing Commission has stated that community confinement may be imposed as a condition of supervised release where appropriate. U.S.S.G. § 5D1.3(e)(1) (2001).

Based upon these factors, the Ninth Circuit found an internal inconsistency in § 3583(d); one portion of it refers to Sentencing Commission policy statements, one of which says that halfway house residency is a permissible condition of supervised release, while another portion conspicuously omits § (b)(11), which (as it is currently numbered) is the halfway house probation condition. *Bahe*, 201 F.3d at 1129–30.

■■■ When a statute is ambiguous, various doctrines of statutory interpretation are applied to determine its meaning. One common method is to look to legislative intent to clarify the statute's ambiguity. The *Bahe* court thus looked to the legislative history. The halfway house probation provision, although currently numbered as § (b)(11), began life as § (b)(12) when it was enacted by the Sentencing Reform Act of 1984, part of the Comprehensive Crime Control Act of 1984, Pub.L. 98–473, Title II, ch. 2, § 212(a)(2), 98 Stat.

1976, 1993 (codified as amended at 18 U.S.C. § 3563). The original § (b)(11) authorized ordering a defendant, as a discretionary probation condition, to remain in the custody of the Bureau of Prisons on nights and weekends for the first year of probation. *Id.* Congress specifically held that such intermittent night and weekend custody was not intended to be imposed as a supervised release condition, although intermittent custody was previously ordered to follow a prison term to create a "split sentence" of a term of imprisonment followed by a term of probation. S.Rep. No. 98–225, at 98 (1983), *reprinted in* 1983 U.S.C.C.A.N. 3182, 3281, 1983 WL 25404, at *98 (report of the Senate Judiciary Committee).

In 1996, Congress passed the Mandatory Victims Restitution Act of 1996 ["MVRA"] as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, tit. 2, subtit. A, 110 Stat. 1227 (codified as amended in scattered sections of 18 U.S.C.). One provision of the MVRA deleted former 18 U.S.C. § 3563(b)(2) and renumbered former §§ (b)(3) through (b)(22) to become §§ (b)(2) through (b)(21). MVRA § 203(2)(B), 110 Stat. at 1227. As a result, former § (b)(11)—referring to intermittent custody for the first year of probation— was renumbered as § (b)(10), and former § (b)(12)—halfway house residency—was renumbered as § (b)(11). However, the MVRA did not amend § 3583(d)'s deliberate non-reference to § (b)(11) to become a non-reference to § (b)(10). The MVRA thus had the effect of having permissible discretionary conditions of supervised release change from conspicuously omitting intermittent custody to conspicuously omitting halfway house residency.

The legislative history of the MVRA contains no indication that Congress intended to make the former § (b)(11), inter-

mittent custody, become available as a discretionary supervised release condition, or to exclude halfway house residency—the former § (b)(12), renumbered to become the new § (b)(11)—as a permissible discretionary supervised release condition. The report of the Senate Judiciary Committee does not refer to *any* discretionary conditions of supervised release, including either halfway house residency or intermittent custody. S.Rep. No. 104–179 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924, http://thomas.loc.gov, 1995 WL 731704. The House conference committee report states that, "The managers intend that the Report of the Senate Committee on the Judiciary to accompany H.R. 665 (S.Rept. 104–179) should serve as the legislative history for this subtitle." H.R. Conf. Rep. No. 104–518, at 111–12 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944, 944–45, http://thomas.loc.gov, 1996 WL 183509, at *111–12. There is thus no evidence whatever that Congress intended the MVRA to change the permissible discretionary conditions of supervised release. Based upon this legislative history, the *Bahe* court found that the defendant's favored reading of § 3583 would produce an "absurd" result, and declined to read the statute in a manner that would violate "explicit and unassailable" congressional intent to the contrary. *Bahe*, 201 F.3d at 1133. It further held that a "catch-all" provision of § 3583(d), which authorizes the sentencing court to impose probation conditions other than § (b)(11), "and any other condition it considers to be appropriate," authorized ordering halfway house residency. *Bahe*, 201 F.3d at 1134–35.

However, I decline to follow *Bahe* for three reasons. The first is that I find no ambiguity in the statute. To find ambiguity, the court in *Bahe* relied upon the numbered requirements in § 3583(d) that specify when a condition of probation may be imposed as a condition of supervised release. On my reading, these numbered requirements limit, and do not expand, the supervised release conditions that a court may order. By its own terms, the statute authorizes the court to order as a supervised release condition any discretionary condition of probation—other than § (b)(11)—"to the extent that such condition" satisfies the numbered requirements. 18 U.S.C. § 3583(d). The numbered requirements thus do not increase the range of probation conditions that the court may consider. For that reason, a court does not gain authority to order halfway house residency merely because such an order would be "consistent with" a Sentencing Commission policy guideline. I therefore do not find—as the *Bahe* court did—that § 3583(d) is "unclear" as to whether halfway house residency is permitted. *See also* Thomas W. Hutchison et al., *Federal Sentencing Law and Practice* § 5D1.3 cmt. 2(c)(iii) at 1276 (2001 ed.) ("The Ninth Circuit's analysis establishing statutory ambiguity is unconvincing.").

■ My second reason for not following *Bahe* is the rule of lenity. This rule of statutory interpretation requires that an ambiguous penal statute must be construed to favor the defendant. *United States v. R.L.C.*, 503 U.S. 291, 305, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) (Souter, J., plurality opinion); *id.* at 307–09, 112 S.Ct. 1329 (Scalia, J., concurring); *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955). It is rooted in "the instinctive distaste[ ] against men languishing in prison unless the lawmaker has clearly said they should." *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (internal quotation marks and citation omitted). Even if the statute were ambiguous, as the *Bahe* court found, the rule of lenity would seemingly require construing it in favor of the defendant. (Curiously, the court in *Bahe* made no mention of the rule of lenity.)

■ Finally, reading § 3583(d)'s catch-all clause as the Ninth Circuit does violates the elementary rule of statutory construction that every clause of a statute must be read to have effect. 2A Singer, *Sutherland's Statutory Construction* § 46:06 at 181. The relevant sentence provides that, where three requirements are satisfied, the sentencing court may order as a discretionary supervised release condition any of the probation conditions from § (b)(1) through (b)(10) and from § (b)(12) through (b)(20), "and any other condition [the court] considers to be appropriate." Reading the catch-all clause to reinstate § (b)(11), though, would mean that (due to the principle of expressio unius), any probation condition set forth in § (b) is available, except § (b)(11)—unless the court considers § (b)(11) to be appropriate, in which case § (b)(11) is available. Under this reading, Congress's deliberate non-reference to § (b)(11) would mean nothing whatever; the statute would mean just the same if Congress had said that any probation condition from § (b)(1) through (b)(20) was available. Such a reading violates the fundamental principle of construction that effect must be given, if possible, to every clause and word of a statute. *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955). The only way to give effect to Congress's deliberately not referring to § (b)(11) as a permissible condition of supervised release is to treat the statute as meaning that § (b)(11) is not a permissible condition. (Indeed, the legislative history of the Sentencing Reform Act of 1984 confirms that Congress intended § (b)(11) not to be available. S.Rep. No. 98–225, at 98 (1983), *reprinted in* 1983 U.S.C.C.A.N. at 3281, 1983 WL 25404, at *98. The rules of statutory construction are not changed simply because Congress has changed what § (b)(11) refers to.)

I would also note that two bills were recently introduced in Congress that would modify § 3583(d) so that it would again refer to § (b)(11). Federal Courts Improvement Act of 2001, H.R. 2522, 107th Cong. § 103(b) (2001); Criminal Law Technical Amendments Act of 2001, H.R. 2137, 107th Cong. § 2(e)(1)(A) (introduced June 12, 2001). These bills suggest that section 3583(d) does not allow imposition of a halfway house requirement as a condition of supervised release.

Nearly two years have passed since *Bahe* was decided. The House has taken no action on H.R. 2522 since July 2001. The House passed H.R. 2137 by unanimous vote and referred it to the Senate July 23, 2001. Curiously, though, the provision of H.R. 2137 that would correct § 3583 disappeared between the report of the House Committee on the Judiciary and the version that was subsequently read on the House floor, approved by the House, and referred to the Senate. H.R.Rep. No. 107–126, at 26–27 (July 10, 2001), *available at* http://thomas.loc.gov, 2001 WL 772988, at *26–*27 (report of the House Committee on the Judiciary, reporting that the bill would modify § 3583(d) to refer to § (b)(11)); 147 Cong. Rec. H4393 (daily ed. July 23, 2001), *available at* http://thomas.loc.gov, 2001 WL 826154, at *H4393 (bill as read on the floor by the Clerk of the House, making no mention of modifications to § 3583(d)); H.R. 2137 RFS, 107th Cong. § 2(e) (July 24, 2001), *available at* http://thomas.loc.gov, WestLaw Cong–Billtxt file (bill as received by the Senate, making no mention of modifications to § 3583(d)).

If Congress wishes to amend section 3583(d) to include halfway house residency as a permissible condition of supervised released, it may do so. However, I decline to read such authority into a statute that expressly excludes it. To do so would violate the clear language of the statute.

NOW, THEREFORE, IT IS HEREBY **ORDERED** that defendant's motion for modification of his conditions of supervised release is **GRANTED**, and the condition requiring that he spend the first ninety days of his release in a community correctional center is vacated. **IT IS FURTHER ORDERED** that an amended judgment of conviction be issued consistent with this decision and order.