**UNITED STATES of America Plaintiff,**

v.

**Bruce PETERSON Defendant.**

No. 04–CR–216.

United States District Court, E.D. Wisconsin.

March 28, 2005.

Gordon Giampietro, for Plaintiff.

Michael Backes, for Defendant.

### *SENTENCING MEMORANDUM*

ADELMAN, District Judge.

The government charged defendant Bruce Peterson with bank fraud arising out of a scheme he devised to steal money from his employer. He pled guilty, and the Probation Office prepared a pre-sentence report ("PSR"), which calculated his offense level as 13 (base level 7, U.S.S.G. § 2B1.1(a)(1), plus 8 based on amount of loss, § 2B1.1(b)(1)(E), minus 2 for acceptance of responsibility, § 3E1.1) and his criminal history category as I, producing an imprisonment range of 12–18 months under the guidelines. Upon consideration

of the arguments of counsel and the recommendation of the probation officer who prepared the PSR, I imposed a non-guideline sentence. In this memorandum I set forth my reasons.

## I. BACKGROUND

Defendant worked for Snap–On Tools ("Snap–On") as an account manager. On three occasions between December 2002 and November 2003 he took checks payable to a Snap–On customer or affiliated company and forged the endorsement, making the checks payable to his sister. Then, without his sister's knowledge, he forged her signature and deposited the checks into her bank account. His sister knew of the deposits, but not the forgery, and assumed that defendant was repaying money he had borrowed from her. In further execution of the scheme, defendant had his sister withdraw money from her account and turn it over to him, after which he deposited it into his own bank account. In total, defendant stole $81,496.89. After discovering his theft in December 2003, Snap–On fired him.

Defendant stated that his addiction to gambling led to the theft. He indicated that for a number of years prior to the theft, he gambled every day, on sports, at tracks, or in casinos. He estimated that he lost more than $300,000. He hid his addiction from his wife, borrowing heavily from friends and other family members including his sister. Shortly after Snap–On fired him and prior to being indicted, defendant enrolled in counseling at Lakeside Family Therapy Clinic and also began attending Gambler's Anonymous ("GA") meetings. By the time of his sentencing, defendant had attended over 100 GA meetings and become a leader of his group. Based on defendant's progress in treatment and in order to facilitate restitution, the probation officer who prepared the PSR recommended a sentence consisting of one day in prison, followed by a sub-stantial period of community confinement as a condition of five years of supervised release.

## II. DISCUSSION

In sentencing defendants, I consider the factors set forth in § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

After considering the above factors, I "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a).

I typically group the § 3553(a) factors into three categories: the nature of the offense, the history of the defendant, and the needs of the public and any victims. I analyze each category and in so doing

consider the specific statutory factors under § 3553(a), including the advisory guidelines. *United States v. Ranum,* 353 F.Supp.2d 984, 989 (E.D.Wis.2005).

## A. Nature of Offense

Defendant's offense involved a serious abuse of trust. Defendant used his position to facilitate a theft of over $80,000. Defendant also involved his sister in the scheme, albeit without her knowledge. That he committed the theft as the result of a gambling addiction did not excuse his conduct.

## B. Character of Defendant

Defendant's prior record consisted of a misdemeanor theft conviction from 1991. Although the offense did not score criminal history points under the guidelines because of its age, U.S.S.G. § 4A1.2(e), it gave me concern because it also involved stealing from an employer to facilitate gambling. Defendant received a sentence of probation, which he successfully completed after paying restitution.

Defendant otherwise had a solid employment history: he worked at Snap–On for eight years, as a DJ for five years, and as a purchaser for eight years before that. After losing his job at Snap–On, he obtained work as a customer service representative, making $15 per hour. His current employer thinks highly of him and anticipates promoting him.

Defendant is married and appears to have a good relationship with his wife. She has supported and assisted him in getting help for his gambling problem and monitors his financial activity. As stated, defendant has been in counseling for his gambling problem since January 2004, regularly attends GA meetings and appears to be benefitting significantly.

## C. Needs of Public

Defendant is not physically dangerous. However, unless his gambling remains under control, he is at risk of reoffending. Therefore, a substantial period of supervision was warranted to ensure that he remained in treatment. Further, to reflect the seriousness of the offense and promote respect for the law, a period of confinement was necessary. Finally, defendant owed a substantial amount of restitution to the victim of his offense.

## D. Guidelines

The guidelines called for a prison term of 12–18 months. I considered a period of confinement at the low end of that range reasonable. However, in light of the § 3553(a)(7) admonition that I consider the need to provide restitution to the victim of the offense, the § 3553(a)(2)(D) directive that I provide defendant with needed treatment in the most effective manner, and the § 3553(a)(3) statement that I consider the kinds of sentences available, I modified the guideline recommendation somewhat.

## E. Sentence

If I had sentenced defendant consistent with the guidelines, he would have lost his job. This would have impaired his ability to repay the money he stole. I do not suggest that a defendant should receive a break just because he owes restitution. But in the present case, where defendant had a reasonably well-paying job and the restitution amount was manageable, § 3553(a)(7) weighed in favor of a sentence that would allow him to remain in the community and working.

Further, a prison sentence would have interfered with defendant's counseling and ability to attend GA meetings. The probation officer argued persuasively that defendant had made a sincere and thus far

successful effort to address his gambling addiction, and that society would benefit more from permitting defendant to continue counseling and participation in GA than from sending him to prison. *See* § 3553(a)(2)(D).

Thus, I fashioned a sentence that provided just punishment but took the above factors into account. *See* § 3553(a)(3).

I sentenced defendant to one day in prison followed by five years of supervised release. I imposed the maximum allowable period of supervised release to ensure that defendant satisfied his restitution obligation and continued addressing his gambling addiction. I ordered defendant to spend the first 180 days of supervised release in a community correctional center with work-release privileges[1] and the second 180 days on home confinement also with work release privileges. This sentence confined defendant for one year, the low end of the guideline range, while still permitting him to work, pay restitution and continue treatment.

As additional conditions, I ordered that defendant not participate in any gambling, including the purchase of lottery tickets, and attend GA meetings. I ordered that he pay restitution at a rate of not less than $100 per month and apply 100% of his yearly federal and state tax refunds toward payment of the restitution. I further ordered that defendant not hold employment having fiduciary responsibilities during the supervision term without first notifying the employer of his conviction, and not hold self-employment having fiduciary responsibilities without the consent of the supervising probation officer. In lieu of the fine, I ordered that defendant perform 20 hours of community service work per year, at the direction of the supervising probation officer, for a total of 100 hours. Other conditions appear in the judgment.

## III.  CONCLUSION

After *Booker,* courts have greater flexibility to fashion sentences to do justice. In the present case, I imposed a sentence that satisfied the need for just punishment but also gave effect to other statutory goals.

---

1. Defendant waived any statutory objection to this condition of supervised release. *See United States v. Mills,* 186 F.Supp.2d 965 (E.D.Wis.2002) (discussing omission of community confinement from list of supervised release conditions in § 3563(b)).