*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0430p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.

No. 07-5653

MICHAEL GILPATRICK,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
No. 05-00009—William J. Haynes, Jr., District Judge.

Argued: October 22, 2008

Decided and Filed: November 26, 2008

Before: KEITH, MERRITT, and GIBBONS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Joseph F. Edwards, EDWARDS & EDWARDS, Cookeville, Tennessee, for Appellant. Marie K. McElderry, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Joseph F. Edwards, EDWARDS & EDWARDS, Cookeville, Tennessee, for Appellant. Marie K. McElderry, Jessica Dunsay Silver, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

GIBBONS, J., delivered the opinion of the court. MERRITT, J. (p. 8), delivered a separate concurring opinion, in which KEITH, J., joined.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge. Defendant Michael Gilpatrick appeals the 108-month sentence imposed by the district court following his jury conviction for conspiring to deprive another of his civil rights, in violation of 18 U.S.C. § 241, and the substantive count of depriving another of his civil rights, in violation of 18 U.S.C. § 242. Gilpatrick does not appeal his conviction. Gilpatrick argues that the district court lacked the statutory authority to impose a twenty-four month community corrections sentence, erred in increasing Gilpatrick's offense level by two because of its finding that Gilpatrick obstructed justice, and erred by increasing the offense level by four because of its finding that Gilpatrick was an organizer or leader of the criminal activity. Consistent with the other circuits that have addressed the question, we hold that district courts retain the power

1

to impose community corrections sentences and affirm the sentence of the district court in its entirety.

## I.

This case arises from an assault that took place within the Overton County Justice Center ("justice center") in Livingston, Tennessee. On the evening of January 30, 2005, Ricky Beaty struck his nineteen-year-old daughter. Beaty's former wife and mother of his child, Christine Munsey, was dating Garry Grigg, a deputy sheriff with the Overton County Sheriff's Department. Grigg took Munsey and Munsey's daughter to the Livingston Police Department where they swore out a domestic-assault warrant for the arrest of Beaty. Grigg called one of the Livingston officers aside and requested that he "rough [Beaty] up" when he went to arrest Beaty. The officer rebuffed Grigg's suggestion and, along with his partner, arrested Beaty in the early morning hours of January 31, 2005, without incident. Officers booked Beaty into the Overton County Justice Center at 1:19 a.m. All inmates in Overton County, regardless of whether the sheriff's department or Livingston city officers arrest them, are held at the justice center.

Grigg, dressed in his deputy's uniform and driving his police cruiser, arrived at the justice center sometime after 4:30 a.m. There, Grigg spoke with Gilpatrick, who worked as the jail administrator for Overton County, and one of Gilpatrick's lieutenants, James Loftis. Grigg informed Loftis and Gilpatrick of Beaty's arrest and inquired as to whether either man knew of an inmate who could "whoop [Beaty's] ass."

After Grigg left the justice center, Gilpatrick ordered Loftis to go into the inmate housing area and speak with two inmates, Steve Wright and Richard Mullins. Both men had a reputation for fighting while incarcerated. Loftis told Wright and Mullins that a new inmate would soon join them. Wright and Mullins were told to assault Beaty but not to "hurt him too bad." When the inmates questioned whether they would get in trouble for fighting, Loftis assured them, "Mike [Gilpatrick] is aware of it."

As an inmate expected to be released on the same day he was arrested, Beaty was held in the justice center's front holding cells. [1] At 8:39 a.m., Gilpatrick ordered Kathy Goolsby, a corporal and first-shift leader at the Overton County Justice Center, to move Beaty from the holding cell back to pod 133, where Wright and Mullins were incarcerated. Gilpatrick told Goolsby the move was to allow others to clean the holding cell. Goolsby thought this was strange because inmates such as Beaty were almost never moved back into the main portion of the jail. Loftis further raised Goolsby's suspicions by telling Goolsby, "if anything happened in the back not to get in a hurry" to send assistance.

Wright and Mullins approached Beaty almost as soon as he entered pod 133 and assaulted him. When the assault ended, Beaty, a man whom the record describes as 5' 4" in cowboy boots, had suffered a concussion and was missing four teeth. Officers took Wright and Mullins to the unsecured officers' break room. There, Gilpatrick met with the inmates. With a smirk on his face, Gilpatrick rhetorically asked Wright and Mullins if Beaty had come into their pod "running his [mouth]." Gilpatrick also served them cake and coffee, allowed them to smoke at the no-smoking facility, and offered to make Wright and Mullins trusties. Inmates designated as trusties are able to work outside the jail and receive two days off their sentences for every day served.

On November 16, 2005, a federal grand jury indicted Gilpatrick, Grigg, and fellow jail lieutenant Johnny Gann on charges of conspiring to deprive another of his civil rights and depriving

---

[1]Under Tennessee state law, a person held on a domestic violence charge must remain in jail twelve hours to "cool off." *See* Tenn. Code Ann. § 40-11-150(h)(1).

another of his civil rights. *See* 18 U.S.C. §§ 241-242. Loftis had earlier entered a plea of guilty to a charge of conspiring to violate Beaty's civil rights. Gilpatrick chose to go to trial; and on October 12, 2006, the jury convicted Gilpatrick of both counts of the indictment. Following a sentencing hearing, the district court adopted the recommendations of the Presentencing Report. Pertinent to this appeal, the district court concluded that Gilpatrick had obstructed justice by encouraging Wright and Mullins to submit a written statement saying they had assaulted Beaty because he would not stop talking. The district court also concluded that a sentencing enhancement was appropriate because Gilpatrick had played a leadership role in the offense. The court sentenced Gilpatrick to 108 months of incarceration, eighty-four months to be served in prison and twenty-four months to be served in a community corrections facility. This represented the bottom end of the advisory guideline range of 108-135 months imprisonment. Gilpatrick's timely appeal of his sentence followed.

## II.

### A.

Gilpatrick first asserts that the district court was without authority to sentence him to a term of confinement in a community corrections facility, such as a halfway house, because congressional amendments to the sentencing statutes contained in the Mandatory Victims Restitution Act of 1996 ("MVRA") removed such authority.[2] Gilpatrick admits that he did not raise this issue before the district court so that this court may only review the district court's decision for plain error. To grant relief under the plain error standard, this court must find that error occurred; the error was plain; the error affected substantial rights; and the plain error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Dedman*, 527 F.3d 577, 591 (6th Cir. 2008) (citation omitted).

The government responds that Gilpatrick cannot succeed under this standard because every court of appeals to have considered the issue has concluded that district courts retain the power to sentence defendants to periods of community confinement as a condition of release. Thus, the government asserts, even if Gilpatrick's statutory argument is correct, the error was in no way plain so that this court cannot grant relief. *Cf. Dedman*, 527 F.3d at 591-92 (assuming *arguendo* that the Arkansas statute at issue was unconstitutional, plain error could not be found because only one state supreme court had found constitutional infirmity in a similar statute). We agree that Gilpatrick's claim cannot succeed because it was not error for the district court to impose a sentence of community confinement. We therefore hold that the 1996 MVRA amendments did not remove this authority from the district courts and join the conclusion reached by every court of appeals to have considered the issue.

As originally drafted, the Sentencing Reform Act of 1984 unambiguously provided that district courts may impose community confinement as a condition of release. *See* 18 U.S.C. § 3563(b)(12) (1984). Section 3583(d) lists the conditions a district court may impose on supervised release. The statute accomplished this by expressly cross referencing the conditions a district court may place upon probation found in Section 3563(b). *See* 18 U.S.C. § 3583(d)(3) (2006) (allowing a district court to order "any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be

---

[2] We note that Congress recently corrected this error in the statutory language. *See* Pub. L. 110-406, § 14(b), 122 Stat. 4291, 4294 (eff. Oct. 13, 2008). This change in the statutes does not affect Gilpatrick, as he was sentenced under the prior language. Therefore, we analyze the statute as it existed at the time of Gilpatrick's sentencing and take note of Gilpatrick's argument that Congress was free to correct its "mistake" at any time during the past twelve years.

appropriate" as a condition of supervised release).**3**  In 1984, Section 3563(b)(12) specifically allowed district courts to impose a sentence of community confinement.  18 U.S.C. 3563(b)(12) (1984).  The express cross-reference found in Section 3583(d)(3) incorporated the community confinement condition into the conditions allowable for supervised release.

The Mandatory Victims Restitution Act of 1996, Pub. L. 104-132, tit. II, subtit. A, § 203, 110 Stat. 1214, 1227 (1996) (codified as amended at 18 U.S.C. § 3563 (2006)), amended Section 3563(b).  Section 203 of the MVRA deleted Section 3563(b)(2), a provision allowing for the imposition of a fine, and renumbered the remaining sections.  § 203(2), 110 Stat. at 1227.  This shifted the community confinement provision from its former place at Section 3563(b)(12) to its current place at Section 3563(b)(11).  *See* 18 U.S.C. § 3563.  However, because the MVRA did not also renumber the cross-reference found in Section 3583(d)(3), the community confinement provision then fell into the gap not cross-referenced by the supervised release statute.  *See* 18 U.S.C. § 3583(d)(3) (2006) (expressly not cross-referencing § 3563(b)(11)).

The Ninth Circuit was the first appellate court to address this issue.  In *United States v. Bahe*, 201 F.3d 1124, 1125, 1128 (2000), a unanimous panel of that court reviewed the legislative history recounted above and concluded that while an argument similar to Gilpatrick's had "superficial appeal" based on an uninformed reading of the statutes' text, the legislative history revealed the current codification of the supervised-release condition to be nothing more than a "clerical error."  As Judge Harry Pregerson's persuasive opinion found, there was no indication in any of the legislative history surrounding the MVRA that Congress intended to deprive district courts of the power to impose community confinement as a condition of release.  *Id.* at 1131-33.  This conclusion is further ratified by a latent ambiguity found within the text of the statute itself.  While the second clause of Section 3583(d)(3) contained the then improper cross-reference, the first clause states that a district court may impose any condition on supervised release that "is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)."  The Ninth Circuit found and Gilpatrick admits that Section 5F1.1 of the Sentencing Guidelines expressly provides that "[c]ommunity confinement may be imposed as a condition of probation *or supervised release*" (emphasis added).  This internal ambiguity created by the pre-2008 Section 3583(d)(3), whereby the first clause authorized district courts to impose community confinement while the interpretation of the second clause asserted by Gilpatrick would withhold such authorization, necessitates the inquiry into legislative history and counsels against adopting the "absurd" result Gilpatrick's interpretation would create.  *Id.* at 1130-34, 1135-36.

In holding that district courts continued to have the power to impose community-corrections sentences as a condition of supervised release, we align with the First, Fifth, Eighth, and Tenth Circuits, which have resolved the issue similarly.  *See United States v. D'Amario*, 412 F.3d 253, 256-57 (1st Cir. 2005) (*per curiam*); *United States v. Del Barrio*, 427 F.3d 280, 282-83 (5th Cir. 2005); *United States v. Griner*, 358 F.3d 979, 981-82 (8th Cir. 2004); *United States v. Huffman*, 146 F. App'x 939, 941-43 (10th Cir. 2005).  We further note that each court of appeals to have considered the issue considered it within the context of a defendant, like Gilpatrick, who did not object to the community-confinement sentence before the district court.  *See, e.g.*, *Griner*, 358 F.3d at 981; *Bahe*, 201 F.3d at 1125.  The fact that each court of appeals to have considered Gilpatrick's argument has resolved the issue in favor of the continued authority of the district court further supports any denial of relief under the plain error standard.  *See Dedman*, 527 F.3d at 591 (noting that for an error to be plain it must be "clear under current law" (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).  This holds true despite the fact that there is a smattering of district court authority supporting Gilpatrick's interpretation of Section 3583(d).  *See id.* at 591-92.  *See also*

---

**3**Subsection (b)(11) originally allowed for intermittent imprisonment, thereby allowing split sentences.  *See* 18 U.S.C. 3563(b)(11) (1984).

*United States v. Mills*, 186 F. Supp. 2d 965 (E.D. Wis. 2002) (finding that the amendments remove the power of district courts to order community confinement as a condition of release); *accord United States v. Martin*, No. 05-30066-WDS, 2007 U.S. Dist. LEXIS 2665 (S.D. Ill. Jan. 12, 2007); *United States v. Barrett*, 198 F. Supp. 2d 1046 (S.D. Iowa 2002), *abrogated by Griner*, 358 F.3d at 982. *But see Wingate v. United States*, No. 07-cv-0034-MJR, 2007 U.S. Dist. LEXIS 82950 (S.D. Ill. Nov. 8, 2007) (in the context of a § 2255 petition, rejecting the argument that district courts may not impose a community confinement release condition and not citing *Martin*).[4]

**B.**

Gilpatrick next argues that the district court erred by increasing the offense level by two levels for obstruction of justice under Section 3C1.1 of the Sentencing Guidelines because the district court did not find that the evidence met the heightened standard of wilfulness required by *United States v. Dunnigan*, 507 U.S. 87 (1993). Gilpatrick admits that *Dunnigan* itself only requires this heightened standard when a court increases the offense level for perjury on the stand during trial; however, Gilpatrick argues the same standard should apply here. The government responds that *Dunnigan* does not apply to an enhancement based upon producing a false document during an investigation, and there was ample evidence in the record to merit the application of the upward adjustment in this case.

"We review for clear error a district court's factual findings underlying its decision to impose an obstruction-of-justice enhancement under § 3C1.1. Conclusions as to what facts constitute obstruction of justice are then reviewed *de novo*." *United States v. Davist*, 481 F.3d 425, 427 (6th Cir. 2007) (citing *United States v. Chance*, 306 F.3d 356, 389 (6th Cir. 2002)) (italics added). Because application of the enhancement is mandatory following a proper finding of obstruction, we finally review the enhancement itself *de novo*. *Chance*, 306 F.3d at 389. "A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

The district court added a two-level adjustment because it found Gilpatrick had "produc[ed] or attempt[ed] to produce a false, altered, or counterfeit document or record during an official investigation." U.S.S.G. § 3C1.1 n.4(c). The district court found that the false document was the statement signed by inmates Wright and Mullins claiming that Beaty had instigated the fight by refusing to cease talking. *Dunnigan* held that "if a defendant objects *to a sentence enhancement resulting from her trial testimony*, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice" under the perjury definition found in 18 U.S.C. § 1621, the federal criminal perjury statute. 507 U.S. at 94-95 (emphasis added). The Supreme Court emphasized that such a finding must be made only if "the accused has committed perjury at trial." *Id.* at 98.

We have followed the Supreme Court's lead in only applying this heightened requirement to enhancements based upon perjury. *Chance*, 306 F.3d at 390. By contrast, we have not required

---

[4] We note that it is not clear in this case that, even were we to agree with Gilpatrick's argument, that the remedy would aid him. When imposing a criminal sanction, the district court "shall impose a sentence that is sufficient, but not greater than necessary" both to protect the public and provide "correctional treatment" to the defendant. 18 U.S.C. § 3553(a). In the usual case, community confinement is limited to six months. *See* U.S.S.G. § 5F1.1 n.2 (stating "[c]ommunity confinement generally should not be imposed for a period in excess of six months"). Here, Gilpatrick received two years in community corrections as a condition of release. The likely alternative would have been continued traditional incarceration. Indeed, only by including the twenty-four month period of community confinement did Gilpatrick's sentence reach the bare minimum 108-month sentence recommended by the advisory Sentencing Guidelines. The availability of community confinement allowed the district judge to tailor the advisory guidelines' range to satisfy Section 3553(a)'s mandate that the sentence be sufficient but not greater than necessary.

such a showing when the enhancement finds its basis in submitting a false document. *See, e.g.*, *United States v. Fredell*, 79 F. App'x 799, 807-08 (6th Cir. 2003) (defendant submitted a false affidavit). Furthermore, the plain meaning of the note does not require any heightened standard. Application note 4(d) to Section 3C1.1 prevents an enhancement based upon document destruction unless the documents destroyed or concealed were "material to an official investigation or judicial proceeding." No such limiting language appears in application note 4(c) concerning the submission of a false document. Therefore, this court need merely to review the district court's factual findings for clear error.

The district court found that Gilpatrick had procured the false statement from Wright and Mullins to hinder FBI Agent Scott Swallow's investigation of Beaty's beating. Inmate Wright testified that Gilpatrick specifically asked him to write the statement. When Wright inquired as to what he should say, Wright testified that Gilpatrick told him, "Hell, just tell them that he come [sic] in there being loud and you asked him to be quiet or something." Gilpatrick said he needed the statement because "[t]hat guy's [Beaty's] family is raising hell on me." Wright further testified that when the FBI investigation started, Gilpatrick sent his lieutenant Johnny Gann to prod Wright once again to write the statement. Wright had not complied with Gilpatrick's first request because he had yet to be made a trusty.

Other testimony supported the district court's finding as well. James Loftis testified that the first suggestion for what would become Wright and Mullins's story concerning the fight's origin came from Gilpatrick. When Loftis brought the two inmates into the officers' break room immediately following the fight, Gilpatrick's first words were "Well, what, did he [Beaty] do come back there running his mouth?" Litter-grant officer[5] and judicial commissioner Bobby Lawson, who was also present in the break room, remembered Gilpatrick's initial response as being more colorful: "What happened? Did he come back there running his dick sucker?" This testimony from three different witnesses clearly supports the district court's finding that the enhancement under Section 3C1.1 should apply.

Such conduct also legally qualifies as obstruction of justice. In *Fredell*, this Court held that the district court properly found the enhancement applied where the defendant had urged a friend to submit a false affidavit stating that the two guns found during the execution of a search warrant belonged to the friend. 79 F. App'x at 808. The panel went on to opine, "Even in the absence of such 'active encouragement,' the district court did not commit clear error in finding that [the defendant] had obstructed justice." *Id.* In this case, there is ample evidence in the record, including testimony from three separate witnesses, to support the notion that Gilpatrick "actively encouraged" Wright and Mullins to submit the false statement. Consequently, we find that the district court's application of the two-level enhancement was not clearly erroneous.

### C.

Gilpatrick's final assignment of error is to the district court's finding that a four-level increase in the sentencing level was appropriate because Gilpatrick was an "organizer or leader of a criminal activity" under Section 3B1.1(a) of the Sentencing Guidelines. Gilpatrick argues that the district court applied the sentencing enhancement primarily because Gilpatrick was leader of the jail, not a leader of the specific criminal activity of which he was convicted. The government responds that this is an incorrect characterization of the district court's ruling and argues that the district court specifically cited multiple paragraphs of the Presentencing Report supported by the record as grounds for its application of the enhancement. We note that "the degree of participation and

---

[5] As the Overton County litter-grant officer, Lawson was responsible for supervising trusty inmates during their work outside of the jail and thus had an interest in having only reliable inmates designated as trusties.

culpability is a factual determination entitled to review for only clear error." *United States v. Allen*, 516 F.3d 364, 375 (6th Cir. 2008).

Section 3B1.1(a) of the Sentencing Guidelines provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants[6] or was otherwise extensive, increase by 4 levels." Application note four counsels that factors courts "should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices . . . the degree of participation in planning or organizing the offense . . . and the degree of control and authority exercised over others." In its oral ruling, the district court cited paragraphs 7-9 and 11-12 of the Presentencing Report in holding that the application of the four-level enhancement was proper. The paragraphs referenced refer to Grigg's meeting with Gilpatrick and Loftis to request that someone assault Beaty, Gilpatrick's order for Loftis to talk with Wright and Mullins about organizing the assault, and Gilpatrick's meeting with Wright and Mullins following the assault in the officers' break room.

These citations and their antecedents in the record support the application of the enhancement. Testimony revealed that Gilpatrick ordered his lieutenant Loftis to speak with both Wright and Mullins about assaulting an inmate who would be put into the pod later in the day. The instructions Loftis delivered were detailed such that Loftis related parameters concerning the amount of force to be employed against Beaty. Shift-leader Goolsby testified that it was Gilpatrick who ordered Beaty's move from the holding cell to pod 133 where Wright and Mullins awaited. Following the assault, Gilpatrick met with both Wright and Mullins and suggested how they might develop a story to hide the fact that it was Gilpatrick who had ordered the assault. When Wright and Mullins delayed writing their formal statement containing Gilpatrick's suggested storyline, Gilpatrick sent Gann to speak with the inmates to press them to submit the false statement. Cross-referencing these facts with their summation in the Presentencing Report, the district court had more than an adequate factual basis to conclude that Gilpatrick was "an organizer or leader" of the conspiracy to deprive Beaty of his civil rights. Nowhere in the record do we find support for the contention that the court based the enhancement on Gilpatrick's status as jail administrator. We therefore find that the district court's enhancement cannot constitute clear error.

## III.

For the forgoing reasons, we affirm Gilpatrick's sentence in its entirety and further hold that district courts retained the power to impose a community-confinement condition to supervised release during the period between the enactment of the Mandatory Victims Restitution Act of 1996 and the October 2008 amendments.

---

[6]Application note 1 to Section 3B1.1 of the Sentencing Guidelines defines a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." The five people required for the four-level enhancement are Overton County Sheriff's Department employees Gann, Grigg, and Loftis along with the two inmates Wright and Mullins.

---

## CONCURRENCE

---

MERRITT, Circuit Judge, concurring. I agree with the discussion of community service in Section II.A of the court's opinion.

As to the sentence, it is clear that the jury in its guilty verdict accepted the testimony of several witnesses, including Wright, Loftis and Goolsby, that Gilpatrick obstructed justice by procuring a false statement and organized the violent assault in which Wright, Mullins, Grigg, Loftis and Goolsby, wittingly or unwittingly, acted as participants. Hence, the enhancements are based on the jury's verdict and not on facts found *de novo* by the sentencing judge. The sentence, therefore, does not violate the *Blakely-Booker-Cunningham* line of cases which foreclose judicial fact findings outside the jury verdict that increase the Guideline offense level.